IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TERRANCE COLEY,
      Petitioner,

v.                                          Civil No. 3:24cv165 (DJN)

CHADWICK DOTSON,
      Respondent.

**MEMORANDUM OPINION**

Terrance Coley ("Petitioner"), a Virginia prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), asserting that recent amendments to Virginia's statutory scheme governing earned sentence credits ("ESC") violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, the Ex Post Facto Clause, and the Eighth Amendment's prohibition against cruel and unusual punishment. (ECF No. 2 at 6.)[1] Specifically, Petitioner contends that he is entitled to relief on the following grounds:

| | |
|---|---|
| Claim One | "The Petitioner incurred a substantial violation of the constitutional right to the due process and equal protection of the laws when the state retroactively amended the good time statute and intentionally excluded the petitioner while other similarly situated offenders obtained benefits of that statute." (*Id.*) |
| Claim Two | "The Petitioner sustained a detrimental contravention of the constitutional right against cruel and unusual punishment, as prohibited by the 8th Amendment, when the state retroactively amended the good time statute in violation of the Ex Post Facto Clause." (*Id.*) |
| Claim Three | "The state's retroactive amendment of the good time statute that intentionally prevented the petitioner from earning the same credits as other |

---

[1] The Court corrects the capitalization, spelling and punctuation and omits unnecessary quotation marks in the quotations from the parties' submissions. The Court employs the pagination assigned by the CM/ECF docketing system. The Court omits any secondary citations in the citations to the parties' submissions.

offenders has increased my punishment by lengthening my sentence and rendering that portion of my detainment unlawful and violative of bedrock constitutional rights." (*Id.*)[2]

Respondent has moved for summary judgment on the grounds that Petitioner's claims lack merit. (ECF No. 29.) Petitioner responded by filing his Cross-Motion for Summary Judgment. (ECF 34.)

## I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[2]    Petitioner's arguments are stated in a Memorandum attached to his § 2254 Petition. (ECF No. 2.) It appears that a number of other Virginia inmates have utilized some form of the same Memorandum to raise challenges to the calculation of their sentences in relation to new amendments to the Earned Sentence Credit system created by the Virginia General Assembly. *See, e.g.*, *Dudley v. Dotson*, No. 1:24CV451 (RDA/WBP), 2025 WL 1582463, at *2 (E.D. Va. June 4, 2025) ("The petitioner incurred a substantial violation of the constitutional right to the due process and equal protection . . . ."); *Lydon v. Dotson*, No. 2:24-CV-591, 2025 WL 2620366, at *2 (E.D. Va. June 30, 2025) ("The petitioner suffered detrimental contraventions of my civil and constitutional rights when the state arbitrarily enacted Va. Code Section 53.1-202.3 . . . ."), *report and recommendation adopted*, No. 2:24-CV-591, 2025 WL 2616967 (E.D. Va. Sept. 10, 2025).

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Respondent has submitted the following documents in support of his Motion for Summary Judgment: the Affidavit of Donna M. Shiflett, the Manager of Court and Legal Services for the Virginia Department of Corrections ("VDOC") (ECF No. 30-1 at 1–11)[3] and documents relevant to Petitioner's conviction and sentence (*id.* at 12–67). Petitioner responded by submitting a memorandum in support of his claims. (ECF No. 35.) This unsworn memorandum does not constitute admissible evidence.

---

[3] The Court omits the paragraph numbers in the quotations to Shiflett's Affidavit.

3

## II.    RELEVANT LEGAL BACKGROUND

### A. Petitioner's Criminal Sentences

On April 12, 2002, the Circuit Court for Arlington County sentenced Petitioner to the

following sentences for the following crimes:

No. CR01-843 Use of a Firearm in the Commission of a Felony,
5 years of active incarceration

No. CR01-846 Use of a Firearm in the Commission of a Felony,
3 years of active incarceration.

No. CR01-847 Use of a Firearm in the Commission of a Felony,
5 years of active incarceration

No. CR01-848  Abduction,
20 years of active incarceration

No. CR01-850 Use of a Firearm in the Commission of a Felony,
5 years of active incarceration

No. CR01-851 use of Firearm in the Commission of a Felon,
5 years of active incarceration

(ECF No. 30-1 at 2.)[4]

### B. Coley's Corrected Custody Responsibility Date and Jail Credit

Section 53.1-20(B) of the Virginia Code provides:

"[p]ersons convicted of felonies committed on or after January 1, 1995, and
sentenced to the Department or sentenced to confinement in jail for a year or more
shall be placed in the custody of [VDOC] and received by the Director into the state
corrections system within sixty days of the date on which the final sentencing order

---

[4]    In addition to the above sentences, the Circuit Court imposed the following sentences to
run concurrently with the above described offenses:  No. CR01-842, Carjacking, fifteen (15)
years of active incarceration to run concurrently with the 20-year sentence imposed in No.
CR01-848; No. CR01-844, Robbery, 5 years of active incarceration to run concurrently with the
20-year sentence imposed in No. CR01-848; No. CR01-845, Attempted Robbery, 2 years of
active incarceration to run concurrently with the 20-year sentence imposed in No. CR01-848;
and No. CR01-849, Abduction, 20 years of active incarceration to run concurrently with the 20-
year sentence imposed in No. CR01-848. (ECF No. 30-1, at 2–3.)

is mailed by certified letter or sent by electronic transmission to the Director by the clerk."

(ECF No. 30-1 at 3 (alterations in original).) "The issuance of a Custody Responsibility Date ("CRD") designates an inmate as state responsible, denoting the 60-day compliance countdown contained in Code § 53.1-20." (*Id.*) Petitioner "was fully sentenced on April 12, 2002, and a certified copy of the sentencing order was mailed by the Circuit Count on June 21, 2002, and received by VDOC on June 25, 2002. . . . At that point, the active term with a CRD was issued, and the file forwarded to the Court & Legal for calculation of a release date." (*Id.* at 3–4.)

> While conducting an audit of Coley's sentence computation record in preparation of this affidavit, Court & Legal staff discovered that, due to an inadvertent administrative error, Coley's time computation record reflected a CRD date of August 23, 2002, which is 63 days after the Circuit Court mailed the final order on June 21, 2002. Therefore, it was determined that Coley's CRD should have been issued by August 20, 2002, in accordance with the 60-day time frame set forth in Code § 53.1-20(B). Upon discovering this error in Coley's record, Court & Legal staff immediately updated Coley's time computation record to reflect his CRD as August 20, 2002.

(*Id.* at 4.) Beginning on Petitioner's updated CRD of August 20, 2002, "VDOC took over Coley's sentences and Coley stopped earning jail credit." (*Id.* at 4–5.)

"Inmate Coley received 470 jail credit days applied to his total 43-year term of confinement in accordance with Code § 53.1-187." (*Id.* at 5.)

> In addition to credit for time spent in jail awaiting adjudication of criminal charges, pursuant to Code 53.1-187, inmates are awarded good time for all time served prior to their CRD. VDOC Operating Procedure ("OP") 830.3, *Good Time Awards*, provides that for time served prior to their CRD inmates are awarded good time at the rate of 2.25 days for each 30 days served on all sentences for felony offenses committed on or after January 1, 1995. . . . Therefore, in addition to receiving credit for the 470 days of jail credit, Coley earned an additional 2.25 good time days for every 30 days served in local/regional jail prior to becoming a state-responsible inmate on August 20, 2002.

(*Id.* at 5–6 (paragraph structure omitted).)

5

At this juncture, it is appropriate for the Court to recount the relevant Virginia procedures governing Earned Sentence Credits.

## C. Earned Sentence Credits

United States Magistrate Judge Douglas E. Miller recently summarized the relevant law as follows:

> Before July 1, 2022, an inmate could earn a maximum sentence credit of 4.5 days credit per 30 days served as a state responsible inmate on all felony offenses committed on or after January 1, 1995. Va. Code Ann. § 53.1-202.3 (1995). In 2020, the Virginia General Assembly amended (the "Amendment" or "2020 Amendment") the ESC system, altering the amount and rate of credit an inmate could earn based on the type of felony an individual was convicted of. 2020 Va. Acts, Spec. Sess. I, Ch. 50. The Amendment divided the offenses and the corresponding rate in two groups: (1) for offenses enumerated in subsection (A), an inmate could earn no more than 4.5 days of credit per 30 days served ("ESC-1" or "subsection (A)"); and (2) for all other offenses, an inmate could earn an enhanced rate—up to 15 days of credit per 30 days served—based on a four-level classification system ("ESC-2" or "subsection (B)"). *Id.* (codified as Va. Code Ann. § 53.1-202.3). The Amendment provided for retroactive application of the ESCs to qualifying sentences and was set to become effective July 1, 2022. *See id.*
>
> Before the Amendment took effect, a 2022 Biennial Budget Amendment modified § 53.1-202.3 by limiting the ability of an inmate serving sentences for both subsection (A) offenses and subsection (B) offenses to earn enhanced sentence credits under subsection (B). Shiflett Aff. (ECF No. 16-1, ¶ 21). Specifically, this amendment, Biennial Budget Item 404(R)(2), provided:
>
> > Notwithstanding the provisions of § 53.1-202.3, Code of Virginia, a maximum of 4.5 sentence credits may be earned for each 30 days served on a sentence that is concurrent with or consecutive to a sentence for a conviction of an offense enumerated in subsection A of § 53.1-202.3, Code of Virginia.
>
> 2022 Va. Acts, Spec. Sess. I, Ch. 2, § 1-113, Item 404(R)(2). In other words, if an inmate was serving a sentence for at least one offense enumerated in subsection (A), then the inmate became ineligible for any enhanced rate and could only earn a maximum sentence credit of 4.5 days per 30 days served for all offenses—including sentences under subsection (B).
>
> However, on July 1, 2024, the 2022-2024 Biennial Budget expired, along with the limiting language in Budget Item 404(R)(2). Shiflett Aff. (ECF No. 16-1, ¶ 23). VDOC officials then had to recalculate inmates' release dates pursuant to § 53.1-202.3, as amended and reenacted on July 1, 2022, considering its retroactive

6

application. *Id.* In doing so, "[w]hether an individual sentence is calculated under ESC-1 or ESC-2 is dependent on whether the offense for which the sentence was imposed is enumerated in subsection (A) of § 53.1-202.3.

*Lydon v. Dotson*, No. 2:24-CV-591, 2025 WL 2620366, at *2–3 (E.D. Va. June 30, 2025) (alteration in original), *report and recommendation adopted*, No. 2:24-CV-591, 2025 WL 2616967 (E.D. Va. Sept. 10, 2025).

### D. Application of Earned Sentencing Credits to Petitioner

Initially, the budget amendments to section 53.1-202.3 of the Virginia Code prevented Petitioner from obtaining any of the additional sentence credits. Specifically,

> the maximum rate of earned sentence credit that Coley could receive remained unchanged because his term of incarceration includes sentences that are enumerated in subsection (A) of Code § 53.1-202.3 (as an example, his sentence imposed for violating Code § 18.2-58.1 (Carjacking (F)) in Case No. CR0 1-842), he was not eligible to earn the enhanced rate of earned sentence credit under subsection (B) of Code § 53.1-202.3 on *any* of his felony sentences that are part of his current term of incarceration.

(ECF No. 30-1 at 8.) However, due to the expiration of the 2022-2024 Biennial Budget, the limiting language no longer applied "and thus required recalculation of inmates' release dates per Code § 53.1-202.3, as amended and reenacted on July 1, 2022, and the retroactive application as provided in the 2020 Acts of Assembly." (*Id.*) At this juncture,

> [w]hether an individual sentence is calculated under ESC-1 or ESC-2 is dependent on whether the offense for which the sentence was imposed is enumerated in subsection (A) of Code § 53.1-202.3. Therefore, inmates with "mixed sentences"— i.e., inmates with a term of incarceration that are listed in subsection (A) and not listed—will earn sentence credit under ESC-1 or ESC-2 depending on the underlying offense of the sentence for which they are presently satisfying.

(*Id.* at 8–9.)

As of now,

> Coley's projected good time release date has been recalculated to apply credit at the rates set forth in subsection (B) of Code § 53.1-202.3 to his ESC-2 eligible sentences—sentences imposed for offenses not listed in subsection (A) of Code § 53.1-202.3 in Case Numbers CR01-843, CR01-845, CR01-846, CR01-847,

7

CR01-850, and CR01-851. Because he had already started serving and fully satisfied his ESC-2 sentences in Case Numbers CR01-843, CR01-846, and CR01-847 when the 2022-2024 Biennial Budget bill expired on July 1, 2024, it was necessary to *retroactively* credit his record for the time period he served on each of those sentences at the enhanced rate based on the corresponding Class Level under ESC-2 to which he was assigned at the time of service.

Coley's felony sentences imposed in Case Numbers CR01-848, CR01-842, CR01-844, and CR01-849 are calculated under the ESC-1 system, and continue to earn credit at a maximum rate of 4.5 days for every 30 days served.

Because inmates are awarded good time at the rate of 2.25 days for each 30 days served prior to the CRD for both ESC-2 and ESC-1 sentences, Coley's jail credit calculations were unaffected by amendments to Code § 53.1-202.3.

Throughout Coley's term of incarceration, he has been assigned to various earning class levels. As of August 9, 2011, Coley has been assigned to the Class Level 1. Coley is currently serving time on a ESC-1 sentence, and is assigned to ESC-1 Class Level 1 and earns 4.5 days for every 30 days served in accordance with VDOC OP 830.3, *Good Time Awards*.

All ESC credits and jail credits are automatically factored into an inmate's projected Good Time Release Date ("GTRD")—the day an inmate would be discharged from VDOC custody having fully satisfied his total term of confinement. Coley's updated projected GTRD is July 11, 2035. This projected date is based on the assumption that he will continue to earn good time at his present earning level, Class Level I (earning credit at the rate of 4.5 days for every 30 days on his ESC-1 sentences and then earning credit at the rate of 15 days for every 30 days served on his remaining ESC-2 sentences) without the occurrence of a future event that impacts the service of his total sentence.

(*Id.* at 9–10.)

### III.    ANALYSIS

Like the litigant in *Lydon*, Petitioner "does not claim that VDOC has miscalculated his sentence or that VDOC revoked any ESC he previously earned." *Lydon*, 2025 WL 2620366 at *4. Instead, just like *Lydon*, Petitioner "argues that the Amendment allocating the rate of ESC earned based on the type of offense committed violates his rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, the Ex Post Facto Clause, and the Eighth Amendment's prohibition against cruel and unusual punishment." *Id.* (citation omitted).

## A. Equal Protection

Petitioner contends that his right to equal protection was violated, because, in light of his criminal offenses, "I can only earn 4.5 days of good time credits per month while other similarly situated offenders can earn 15 days per month." (ECF No. 2 at 9.) This claim lacks merit for the reasons stated by Judge Miller:

> The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "This requirement does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *White v. Dotson*, No. 2:24-cv-189, 2025 WL 783154, at *5 (E.D. Va. Feb. 5, 2024) (internal quotations marks and citations omitted). To prevail on an equal protection claim, an individual must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (stating that a plaintiff must plausibly allege that he and his hypothetical counterpart are similarly situated in "all relevant aspects alike."). If the plaintiff makes this initial showing, then the court considers whether the disparity in treatment can be justified under the requisite level of scrutiny. *See Morrison*, 239 F.3d at 654.
>
> [Petitioner] fails to demonstrate that he has been treated differently from others with whom he is similarly situated. . . . [T]he relevant inquiry is whether those sentenced to offenses under subsection (A) are similarly situated to those sentenced to offenses under subsection (B). "When a law imposes collateral consequences based on criminal convictions, two impacted offenders who are treated differently can be similarly situated if their convictions are similar enough." *Doe v. Settle*, 24 F.4th 932, 940 (4th Cir. 2022). But [Petitioner] fails to identify any non-enumerated offense under subsection (B) that is "similar enough" to his own offenses to serve as a proper comparator, and a vague reference to every inmate in VDOC custody fails to establish that he and a counterpart are similarly situated "in all relevant aspects alike." *Nordlinger*, 505 U.S. at 10; *see also Firewalker-Fields v. Virginia*, No. 7:22-cv-384, 2022 WL 4004210, at *2 (W.D. Va. Aug. 31, 2022) (finding that inmate had not properly alleged that preferential treatment to inmates convicted of non-violent or non-sex offenses violates Equal Protection Clause); *Wimbush v. Youngkin*, No. 7:22-cv-640, 2023 WL 2505483, at *3 (W.D. Va. Mar. 14, 2023) ("[C]ourts have recognized that violent felony offenders are not similarly situated to non-violent felony offenders." (citing *Scott v. Dennison*, 739 F. Supp. 2d 342, 361 (W.D.N.Y. 2010); and then citing *United States v. Allen*, 41 F. App'x 630, 632 (4th Cir. 2002))). Therefore, [Petitioner] fails to properly allege that he is similarly situated to those treated more favorably in subsection (B)..

9

Next, all state inmates convicted of an offense listed under subsection (A)—or, in other words, those who are most similarly situated to [Petitioner]—are treated the same under Va. Code. Ann. § 53.1-202.3. [Petitioner] fails to identify any other inmate serving a subsection (A) sentence that VDOC has treated differently than him. *See White*, 2025 WL 783154, at \*5. "Rather, the opposite is true—VDOC treats all Virginia inmates convicted of [abduction with intent to defile, rape, object sexual penetration, and aggravated sexual battery], or any other offense enumerated in subsection (A) the same under the amendments to the ESC statutory scheme and those inmates earn ESCs at a maximum rate of 4.5 days per 30 days served." *Id.* Therefore, [Petitioner's] equal protection claim fails.

Even assuming that [Petitioner] is similarly situated to subsection (B) offenders, his claim still fails because he cannot "overcome the presumption of rationality that applies to government classifications." *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008) (citations omitted). . . . [T]he government has "a legitimate interest in 'preventing the early release of serious offenders' and . . . denying inmates sentence credits 'based on their criminal record is rationally related to that interest.'" *Hoglan v. Youngkin*, No. 7:22-cv-460, 2023 WL 5214122, at \*5 (W.D. Va. Aug. 14, 2023) (quoting *Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991)); *see also Moss v. Clark*, 886 F.2d 686, 689 (4th Cir. 1989) (upholding bifurcated good time credit scheme based on inmate assignment to District of Columbia institution or federal institution because government interest in efficient prison administration). Bifurcating the Virginia ESC system "could conceivably balance the goals of reducing prison populations, protecting public safety, and minimizing the administrative burdens imposed on the [VDOC]," which rationally relates to the furtherance of a legitimate government interest. *Hoglan*, 2023 WL 5214122, at \*5; *see White*, 2025 WL 783154, at \*6 (recommending the same).

*Lydon*, 2025 WL 2620366 at \*4–5 (first alteration in original). Accordingly, this aspect of Claim One will be DISMISSED.

## B. Due Process

In another part of Claim One, Petitioner contends that his due process rights were violated when he was not allowed to earn fifteen (15) days of ESC per month for all of his sentences.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997)

10

(citations omitted).  A liberty interest may arise from the Constitution itself, or from state laws and policies.  *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005).  "Petitioner does not enjoy any liberty interest directly under the Constitution in receiving ESCs in order to gain an early release from this prison sentence."  *Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *2 (E.D. Va. Sept. 30, 2009) (citing *Greenhollz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *James v. Robinson*, 863 F. Supp. 275, 278 (E.D. Va. 1994) *aff'd*, No. 94–7136, 1994 WL 709646 (4th Cir. Dec. 22, 1994)).  Therefore, Petitioner must demonstrate that Virginia laws created the liberty interest to which he claims entitlement.  He has not done so.  *See Dudley v. Dotson*, No. 1:24CV451 (RDA/WBP), 2025 WL 1582463, at *7 (E.D. Va. June 4, 2025) (concluding that inmates do not possess a state-created liberty interest in earning the maximum amount of ESCs under Virginia's statutory scheme); *Lydon*, 2025 WL 2620366, at *4 n.4 (same); *White v. Dotson*, No. 2:24CVL89, 2025 WL 783154, at *7 (E.D. Va. Feb. 5, 2025) (same), *report and recommendation adopted*, No. 2:24CV189, 2025 WL 778058 (E.D. Va. Mar. 11, 2025).  Accordingly, the due process aspects of Claim One also lack merit.  Claim One will therefore be DISMISSED.

## C. Ex Post Facto

In parts of Claim Two and Claim Three, Petitioner contends that the Amendments violated his rights under the Ex Post Facto Clause.  Petitioner contends that "[t]he newly enacted version of 53.1-202.3 has effectively lengthened my sentence and thereby increased my punishment by preventing me from earning the same good time credits as other similarly situated offenders."  (ECF No. 2 at 10 (citing *Weaver v Graham*, 450 U.S. 24 (1981); *Lynce v. Mathis*, 519 U.S. 433 (1997); *Lindsey v. Washington*, 301 U.S. 397 (1937)).  This claim lacks merit for the reasons stated by Judge Miller:

11

> The United States Constitution prohibits states from enacting ex post facto laws, U.S. Const. art I, § 10, cl. 1, and a state violates this mandate when it "punishes as a crime an act previously committed, which was innocent when done; . . . makes more burdensome the punishment for a crime, after its commission, or . . . deprives one charged with [a] crime of any defense available according to law at the time when the act was committed[.]" *Collins v. Younghood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). The "controlling inquiry" is whether retroactive application of the changed law creates a "sufficient risk of increasing the measure of punishment[.]" *Garner v. Jones*, 529 U.S. 244, 250 (2000) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)).
>
> Lydon relies on *Weaver v. Graham*, 450 U.S. 24 (1981) in support of his claim. In *Weaver*, the Supreme Court held unconstitutional a Florida statute that reformulated state inmates' good time credit rates, decreasing the rates for all inmates sentenced before and after the statute's implementation. 450 U.S. at 25–28. In other words, the Florida statute retroactively decreased sentence credits that inmates already earned. *Id.* Here, Lydon has earned ESC at a rate of 4.5 days credit per 30 days served since he became a state responsible inmate. Through Va. Code Ann. § 53.1-202.3, the VDOC has not reduced any of Lydon's already applied sentence credit, as in *Weaver*. Instead, the statute provides an opportunity for qualifying inmates to earn ESC at a higher rate.

*Lydon*, 2025 WL 2620366 at *6 (alterations and omissions in original).

Here, the change in the law decreased the length of time Petitioner was required to serve on his sentences. As the Court stated in *White*, the new law

> neither creates a new crime, nor does it deprive [Petitioner] of a previously existing defense. It does not increase the possible punishment above what was permitted when [Petitioner] committed the underlying offenses. It does not reduce the amount of ESCs or the rate of accrual from the levels available when [Petitioner] committed the underlying offenses. And, it does not permit VDOC to, and VDOC did not, reduce already applied or vested sentence credits.

*White*, 2025 WL 783154, at *8. In fact, the amended law shortened the time Petitioner was required to serve. Prior to the amendments, Petitioner could only earn a maximum of 4.5 days of ESC for every thirty (30) days served. Now, in the wake of the amendments, Petitioner could earn up to fifteen (15) days of ESCs for every thirty (30) days served for some of his sentences. The Ex Post Facto aspect of Claims Two and Three will therefore be DISMISSED.

12

## D. Cruel and Unusual Punishment

In parts of Claims Two and Three, Petitioner also contends that the 2020 Amendments violated his right to be free from cruel and unusual punishment. In the prison context, this language "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Petitioner fails to articulate how the 2020 Amendment subjected him to inhumane conditions of confinement. At best, he asserts that "[r]equiring me to serve that portion of my sentence that should be reduced in the same manner as those other offenders constitutes cruel and unusual punishment in violation of the 8th Amendment's protection therefrom." (ECF No. 2 at 13.) In rejecting this same argument, this Court has concluded, "[i]t can hardly be said that serving a lawfully imposed and correctly calculated sentence is 'cruel and unusual.'" *Dudley v. Dotson*, No. 1:24CV451 (RDA/WBP), 2025 WL 1582463, at *8 (E.D. Va. June 4, 2025); *accord White*, 2025 WL 783154, at *9 (rejecting this argument as a basis for an Eighth Amendment claim). Accordingly, the Eighth Amendment aspects of Claims Two and Three will be DISMISSED.

## IV.   CONCLUSION

Respondent's Motion for Summary Judgment (ECF No. 29) will be GRANTED.

Petitioner's Motion for Summary Judgment (ECF No. 34) will be DENIED.  Petitioner's claims

will be DISMISSED.  The action will be DISMISSED.  A certificate of appealability will be

DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to

Petitioner and counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: <u>January 13, 2026</u>